UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LYNN MITZAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 4:08-CV-540 (CEJ) |
| ) | |
| WESTERN HERITAGE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the parties' cross-motions for summary judgment. All issues are fully briefed.

Plaintiff Lynn Mitzan filed this declaratory judgment action to recover $1,000,000, the full amount of coverage available under a commercial general liability policy issued by defendant Western Heritage Insurance Company to Mary Hatcher, doing business as Curve Inn. On May 11, 2005, plaintiff obtained a judgment against Ms. Hatcher on a claim that her employees served alcohol to a visibly intoxicated person. Defendant refused to pay the judgment, citing the policy's liquor liability exclusion. Plaintiff contends that the exclusion renders the policy illusory. Both parties move for summary judgment.

### I. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court

is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed.R.Civ.P. 56(c). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corporation v. Catrett, 477 U.S. 317, 322 (1986).

## II. Factual Background

Plaintiff Lynn Mitzan is the surviving spouse of Daren Mitzan, who died as the result of an automobile collision with Mark Galkowski on October 2, 1999. Blood tests established that Mr. Galkowski was legally intoxicated at the time his vehicle crossed a highway median and struck Mr. Mitzan's vehicle. Earlier on October 2nd, Mr. Galkowski had consumed alcohol at the Curve Inn. He pleaded guilty to involuntary manslaughter.

On August 30, 2002, plaintiff filed a wrongful death action in the Circuit Court of the City of St. Louis, naming as defendants Galkowski, Hatcher, and plaintiff's automobile insurance company. Lynn Mitzan v. Mark Galkowski et al., Cause No. 022-10522. The claim against Ms. Hatcher was brought pursuant to the Missouri Dram

Shop statute, § 537.053, Mo.Rev.Stat.[1]  Plaintiff alleged that Ms. Hatcher's employees at the Curve Inn served alcohol to Mr. Galkowski after he was obviously intoxicated, which caused or contributed to cause the accident in which Mr. Mitzan died.

Ms. Hatcher died before trial and plaintiff moved the court to appoint a defendant *ad litem* pursuant to § 537.021.1(2), Mo.Rev.Stat., asserting generally that there was a policy of insurance insuring Ms. Hatcher doing business as Curve Inn.[2] The court appointed attorney James Martin as defendant *ad litem*.  Following a bench trial on May 11, 2005, at which defendants presented no evidence, the court found that Mr. Galkowski was legally intoxicated at the time of the accident and that he had been served alcohol at the Curve Inn after he was visibly intoxicated.  Based on these findings, the court concluded that Ms. Hatcher violated § 537.053, Mo.Rev.Stat., and contributed to Mr. Mitzan's death.  Furthermore, the court found that the sale of intoxicants to Mr. Galkowski constituted conscious disregard for the safety of others, justifying additional damages for aggravating circumstances.  Plaintiff was awarded damages in the amount of $7,000 for medical and/or funeral expenses, $1,250,000 for loss of support, $1,250,000 for loss of services, $2,500,000 for damages under § 537.053, and $5,000,000 in punitive damages.  Plaintiff accepted $50,000 from Mr. Galkowski in settlement of her claims against him.

---

[1] Section 537.053.2 allows a cause of action against the holder of a liquor license who sells alcoholic beverages to a visibly intoxicated person.

[2] Section 537.021.1(2) allows a cause of action to survive a "wrongdoer's" death, so long as the defendant was insured for liability against damages for wrongdoing. The appointment of a defendant *ad litem* is improper in the absence of proof of liability insurance coverage. Spicer by Spicer v. Jackson by Berra, 853 S.W.2d 402, 403 (Mo. Ct. App. 1993).  Defendant argues that there was no proof of insurance in the underlying case, rendering the appointment of a defendant *ad litem* invalid, because defendant denied coverage for plaintiff's claim before she sought the appointment. Because the Court determines that the liquor liability exclusion precludes plaintiff's recovery, this argument will not be further addressed.

In the present action, plaintiff seeks to recover the full amount of coverage -- $1,000,000, -- available under the commercial general liability policy issued to "Ed & Jo Zerban and Gary & Mary Parker[3] d/b/a Curve Inn." The covered business was classified as a "Restaurant with sales of alcoholic beverage . . . more th[a]n 75% of receipts without a dance floor." The initial policy was issued for the period of October 3, 1996 to October 3, 1997 and was renewed for subsequent one-year periods. There is no dispute that the policy was in effect on October 2, 1999, when the accident occurred.

The following provisions are relevant to the present dispute:

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . .

* * *

2. Exclusions

    This insurance does not apply to:

* * *

    c. Liquor Liability

    "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

    (1) Causing or contributing to the intoxication of any person;

    (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

    (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

---

[3]Ms. Hatcher was also known as Mary Parker.

> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

The policy also contains an exclusion for punitive or exemplary damages.

In 1998, defendant made liquor liability coverage available to its insureds for an additional premium. Ms. Hatcher testified at her deposition in the underlying state court action that she had discussed coverage for alcohol-related accidents with her insurance broker but decided not to purchase the coverage due to its expense.

### III. Discussion

Under Missouri law, which applies to this diversity case, rules governing the interpretation of insurance policies are well settled. Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 77 (Mo. 1998) (*en banc*). When interpreting the language of an insurance contract, courts give the language its plain meaning. Farmland Indus., Inc. v. Republic Ins. Co., 941 S.W.2d 505, 508 (Mo. 1997) (*en banc*). The plain or ordinary meaning is the meaning that the average layperson would understand. Id. To determine the ordinary meaning, the courts consult standard English language dictionaries. Id. Applying rules of construction is unnecessary when a contract provision is clear and unambiguous. State Farm Mut. Auto. Ins. Co. v. Ballmer, 899 S.W.2d 523, 525 (Mo. 1995) (*en banc*). Courts may not create ambiguities in order to distort the language of an unambiguous policy. Rodriguez v. General Acc. Ins. Co. of America, 808 S.W.2d 379, 382 (Mo. 1991) (*en banc*). In addition, insurance policies are to be construed in favor of the insured. Standard Artificial Limb, Inc. v. Allianz Insurance Co., 895 S.W.2d 205, 209 (Mo. Ct. App. 1995). Policy exceptions and limitations are strictly construed against the insurer. Id.

Defendant argues that it is entitled to summary judgment because the liquor liability exclusion bars coverage for plaintiff's judgment against Mary Hatcher. Plaintiff

does not contest defendant's assertion that, by its plain language, the exclusion bars the recovery she seeks. Rather, she contends that enforcement of the exclusion renders the contract of insurance illusory.

Provisions in an insurance policy which are unambiguous when read within the policy as a whole but, in effect, provide only illusory coverage, should be enforced to satisfy the reasonable expectations of the parties. Lee R. Russ & Thomas F. Segalla, 2 Couch on Insurance 3d § 21.4 (updated 2008).

Liquor liability exclusions are standard in the insurance industry.

> Standard commercial general liability policies generally exclude bodily injury or property damage arising from the insured's manufacture, distribution, or sale of alcoholic beverages. Thus, claims based upon the insured's violation of state alcoholic beverages law, negligence in failing to ascertain minor driver's age, failure to warn driver of his or her intoxication and prevent him or her from driving while intoxicated, fall within the exclusion. By specifically excluding coverage for this risk generally, those who want such coverage must specifically request it and pay corresponding additional premiums, thereby allowing the insurer to assess the specific risks based on the nature and location of the business, as well as the general character and history of the insured.

Steven Plitt et al., 9A Couch on Insurance 3d § 129:32 (updated 2008).

The Missouri Court of Appeals has considered a liquor liability exclusion identical to the one at issue in this case. In Auto Owners (Mut.) Ins. Co. v. Sugar Creek Mem'l Post No. 3976, 123 S.W.3d 183 (Mo. Ct. App. 2003), an intoxicated driver struck another vehicle, killing the occupants. The driver had been served alcohol at a bar operated by the VFW. The VFW carried a commercial general liability policy that included the liquor liability exclusion. Id. at 185. In a matter of first impression, the court addressed whether the VFW was "in the business of selling, serving, or furnishing alcoholic beverages." The court held that the analysis should focus on the activities of the insured and the risks inherent in those activities, rather than on the insured's corporate status. Id. at 189. Of significance to the present dispute, once it was

determined that the VFW was in the business of serving alcohol, the liquor liability exclusion was applied without concern that it rendered the coverage illusory.

Plaintiff cites Monticello Ins. Co. v. Mike's Speedway Lounge, Inc., 949 F. Supp. 694 (S.D. Ind. 1996), in support of her contention that the liquor liability exclusion renders the policy illusory. Assuming without deciding that a case decided under Indiana law is applicable to the present matter, the holding in Monticello is inapposite to plaintiff's contention. The policy at issue in Monticello contained three exclusions: an "assault and battery" exclusion, an "absolute liquor" exclusion, and the so-called "dram shop" exclusion identical to the one in this case. Id. at 696-67. The Monticello court determined that the "absolute liquor" exclusion was worded so broadly as to exclude coverage for all potential claims and thus was illusory. Id. at 702. By contrast, the court stated, the assault and battery exclusion and the dram shop exclusion did not render coverage under the policy illusory. Id. at 703. The court nonetheless denied the insurer's motion summary judgment because, under Indiana law, once it was determined that the coverage was illusory under the absolute liquor exclusion, the court was required to enforce the reasonable expectation of the insured. Id. ("There is no indication that Indiana courts are interested in enforcing other fine print in an insurance policy that has already been deemed illusory and contrary to public policy.") Disputes of fact regarding the insured's expectations precluded summary judgment. Id.

The policy at issue in this case did not include an exclusion comparable to the absolute liquor exclusion that the Monticello court determined was illusory. Thus, there is no basis for refusing to apply the unambiguous terms of the liquor liability exclusion. Furthermore, based on Mary Hatcher's testimony that she declined to purchase additional coverage, there is no dispute of fact with respect to whether the insured

reasonably expected that she had bargained for and received liquor liability coverage.

The Court finds that the liquor liability exclusion in the commercial general liability policy issued by defendant Western Heritage Insurance Company to Mary Hatcher, doing business as Curve Inn, bars plaintiff's recovery. The Court declines to address defendant's additional arguments that the underlying judgment was invalid and that the policy's exclusion of punitive and exemplary damages barred coverage for the award of punitive damages on plaintiff's claim of aggravating circumstances.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant Western Heritage Insurance Company for summary judgment [Doc. #16] is **granted**.

**IT IS FURTHER ORDERED** that the motion of plaintiff Lynn Mitzan for summary judgment [Doc. #18] is **denied**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of April, 2009.